## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT DAVYDOV,<br><br>     Plaintiff,<br><br>        v.<br><br>CONOCOPHILLIPS, RYAN M. LANCE,<br>CHARLES E. BUNCH, CAROLINE MAURY<br>DEVINE, JOHN V. FARACI, JODY<br>FREEMAN, GAY HUEY EVANS, JEFFREY<br>A. JOERRES, ADMIRAL WILLIAM H.<br>MCRAVEN, SHARMILA MULLIGAN,<br>ERIC D. MULLINS, ARJUN N. MURTI,<br>ROBERT A. NIBLOCK, DAVID T.<br>SEATON, and R.A. WALKER,<br><br>     Defendants. | Civil Action No. _____ |

## COMPLAINT

Plaintiff, Robert Davydov ("Plaintiff"), by his undersigned attorneys and for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief as to all other allegations, as follows:

## NATURE OF THE ACTION

1.      This action arises from a proposed transaction (the "Transaction") through which ConocoPhillips ("ConocoPhillips" or the "Company") will acquire Concho Resources Inc. ("Concho").

2.      The Board of Directors of ConocoPhillips (the "Board") approved the Transaction on October 18, 2020, and thereafter ConocoPhillips entered into a definitive merger agreement for the Concho acquisition (the "Merger Agreement").  Under the terms of the Merger Agreement, each share of Concho common stock will be exchanged for a fixed ratio of 1.46 shares of ConocoPhillips common stock.

3.      A stockholder meeting will take place (the "Stockholder Meeting"), during which stockholders will be permitted to vote in favor, or against, the Transaction.

4.      On November 18, 2020, the Company filed a joint proxy statement/prospectus on Form S-4 (the "Registration Statement") with the Securities and Exchange Commission ("SEC"). The purpose of the Registration Statement is to advise stockholders of material information necessary for an informed vote.

5.      In this case, the Registration Statement omits and misstates critical information directly relevant to the Transaction, which stockholders are entitled to understand before voting. These misstatements and omissions violate Section 14(a) of the Securities Exchange Act of 1934 (the "1934 Act").

6.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from taking any steps to consummate the Transaction unless and until the material information discussed below is disclosed to ConocoPhillips' stockholders or, in the event the Transaction is consummated, to recover damages resulting from the defendants' violations of the 1934 Act.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Section 14(a) of the 1934 Act and Rule 14a-9.

8.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District so as to make the exercise of

2

jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

10.     Plaintiff is a stockholder of ConocoPhillips and has continuously owned ConocoPhillips common stock at all relevant times.

11.     Defendant ConocoPhillips is a Delaware corporation with principal executive offices at 925 N. Eldridge Parkway, Houston, Texas 77079.  The Company's common stock is traded on the New York Stock Exchange under the symbol "COP."

12.     Defendant Ryan M. Lance is the Chief Executive Officer of ConocoPhillips and the Chairman of the Board.

13.     Defendant Charles E. Bunch is a member of the Board.

14.     Defendant Caroline Maury Devine is a member of the Board.

15.     Defendant John V. Faraci is a member of the Board.

16.     Defendant Jody Freeman is a member of the Board.

17.     Defendant Gay Huey Evans is a member of the Board.

18.     Defendant Jeffrey A Joerres is a member of the Board.

19.     Defendant Admiral William H. McCraven is a member of the Board.

20.     Defendant Sharmila Mulligan is a member of the Board.

21.     Defendant Eric D. Mullins is a member of the Board.

22.     Defendant Arjun N. Murti is a member of the Board.

23.     Defendant Robert A. Niblock is a member of the Board.

24.     Defendant David T. Seaton is a member of the Board.

25.     Defendant R.A. Walker is a member of the Board.

26.     The individual defendants set forth immediately above are collectively referred to as the "Individual Defendants."

## **FACTUAL BACKGROUND**

27.     ConocoPhillips is an independent oil and gas exploration and production company with operations and activities in fifteen countries.

28.     On October 19, 2020, ConocoPhillips and Concho jointly announced the Transaction:

> HOUSTON & MIDLAND, Texas--(BUSINESS WIRE)-- ConocoPhillips (NYSE: COP) and Concho Resources (NYSE: CXO) today announced that they have entered into a definitive agreement to combine companies in an all-stock transaction. Under the terms of the transaction, which has been unanimously approved by the board of directors of each company, each share of Concho Resources (Concho) common stock will be exchanged for a fixed ratio of 1.46 shares of ConocoPhillips common stock, representing a 15 percent premium to closing share prices on October 13. The transaction combines two high-quality industry leaders to create a company with an approximately $60 billion enterprise value that will offer stakeholders a superior investment choice for sustainable performance and returns through cycles. Highlights of the transaction include:

- Two best-in-class asset portfolios that create a combined resource base of approximately 23 billion barrels of oil equivalent with a less than $40 per barrel WTI cost of supply and an average cost of supply below $30 per barrel WTI.

- High-quality balance sheet that offers superior sustainability, resilience and flexibility across price cycles.
- ConocoPhillips and Concho expect to capture $500 million of annual cost and capital savings by 2022.

- A financial framework that delivers greater than 30 percent of cash from operations via compelling dividends and additional distributions.

- Elevated commitment to environmental, social and governance excellence with a newly adopted Paris-Aligned Climate Risk strategy, available at www.conocophillips.com.

29.     The October 19, 2020 press release further stated that the "Rationale and Benefits" associated with the Transaction were as follows:

Today's transaction brings together two companies with the leadership, assets and a capital allocation approach to generate growing free cash flow, supported by a top-tier investment-grade balance sheet that provides investors with sustainability, resilience and flexibility. The combined company will have competitive advantages across sector fundamentals:

- Combination creates leading company with scale and relevance: The transaction offers a compelling combination of size, best-in-class assets, financial strength and operating capability. The new ConocoPhillips will be the largest independent oil and gas company, with pro forma production of over 1.5 million barrels of oil equivalent per day (MMBOED).

- Massive, diversified and low cost of supply resource base provides years of high-value investments: The combined company will hold approximately 23 billion barrels of oil equivalent (BBOE) resources with an average cost of supply of below $30 per barrel WTI. The transaction brings together contiguous and complementary "core-of-the-core" acreage positions across the Delaware and Midland basins to create an unconventional powerhouse that also includes leading positions in the Eagle Ford and Bakken in the Lower 48 and the Montney in Canada. The expanded Permian position provides a strong complement to ConocoPhillips' other globally diverse, low-capital-intensity legacy positions.

- Disciplined capital allocation criterion will drive  investment decisions: The company's portfolio will be developed for value and free cash flow. The company will target an average reinvestment level of less than 70 percent of cash from operations to ensure sufficient free cash flow generation to fund compelling returns of capital to shareholders.
- Significant cost and capital savings will drive uplift in value and sustained cost structure improvement: The companies announced that together they expect to capture $500 million of annual cost and capital savings by 2022. The identified savings will come from lower general and administrative costs and a reduction in ConocoPhillips' future global new ventures exploration program. This de-emphasis of ConocoPhillips' organic resource addition program is driven by the addition of Concho's large, low-cost resource base. Additional supply chain, commercial and drilling and completion capital efficiency savings are not yet included in these cost-reduction estimates.

- Proven technical and operational expertise will be applied across the combined portfolio to unlock value: Both ConocoPhillips and Concho are already recognized leaders in oil and gas technology and operations. As part of the planned integration, the company will adopt a "best practices" approach that will share learnings and select best practices focused on the North American unconventional portfolio.

- High-quality balance sheet provides resilience through cycles and supports commitment to sustainable shareholder return of capital: ConocoPhillips will offer a compelling ordinary dividend supplemented by additional distributions as needed to meet its target distribution of greater than 30 percent of cash from operations. The company seeks to maintain a strong investment-grade credit rating across price cycles. On a pro forma basis, the combined company net debt is approximately $12 billion as of June 30, 2020, representing an attractive leverage ratio of 1.3 at 2021 consensus commodity prices.

- The companies share a track record of and commitment to ESG excellence: The combination creates a platform for leading the sector into the energy transition and a low-carbon future. The combined entity will be the first U.S.-based oil and gas company to adopt a Paris-aligned climate risk strategy to meet an operational (Scope 1 and Scope 2) net-zero emissions ambition by 2050.

30.     Although both boards of directors have approved the Transaction, it is now subject to the approval of both ConocoPhillips and Concho's stockholders.

31.     The Transaction is expected to close in the first quarter of 2021.  It is therefore imperative that stockholders receive all material information that has been omitted from the Registration Statement so that they can determine whether to vote in favor of the Transaction.

## THE MISLEADING REGISTRATION STATEMENT

32.     The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Transaction, in violation of Section 14(a) of

the 1934 Act.

33.     To value the Company and Concho in connection with the Transaction, the respective management teams created financial projections for the expected future performance of each company.  The respective financial advisors for each company relied on these projections, in turn, in rendering their fairness opinions, which endorsed the Transaction consideration as fair to investors.   Item 1015(b)(6) of Exchange Act Regulation M-A requires disclosure, in the Registration Statement, of "the bases for and methods of arriving at" the findings in the respective fairness opinions, as well as the underlying projections created by the management teams (indeed, the SEC has stated that management projections are virtually always material and must be disclosed).   The Registration Statement, however, omits several categories of important information required for stockholders to fairly understand and evaluate the calculations and the subsequent fairness opinions.

34.     First, there is significant confusion regarding what forecasts the Company's financial advisor ("Goldman") utilized in its various analyses.  The term "forecasts" is defined by Goldman in the Registration Statement as both (i) certain financial analyses and forecasts for Concho on a standalone basis *prepared by Concho management* and (ii) certain financial analyses and forecasts for Concho on a standalone basis *prepared by ConocoPhillips management*. Notwithstanding the ambiguity of this definition, Goldman references throughout the fairness opinion section that it uses these "forecasts" in various calculations, rendering the valuation materials of little use to stockholders unless they are able to understand which set of projections are being used in each of these calculations.

7

35.    Second, the Registration Statement fails to provide unlevered free cash flows projected to be generated by Concho as reflected in the forecasts prepared by Concho management. Although Goldman may or may not have used these free cash flow projections in its various analyses, the information is nonetheless critical to ConocoPhillips stockholders and they are entitled to them here.  The Delaware Court of Chancery has stated: "Indeed, projections of this sort are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or (as already discussed) market multiples."  *In re Netsmart Technologies, Inc. S'holders Litig.*, 924 A.2d 171, 203 (Del. Ch. 2007). Moreover, because changes in these projections can result in dramatically different valuations, such information is virtually *per se* material in the eyes of regulators and routinely disclosed in M&A transactions.  Indeed, in the Transaction at issue here, the estimated cash flow per share based on the "forecasts" appears to differ significantly from median estimates published by market brokers, which were also reviewed by Goldman and disclosed in the Registration Statement.  *See* Registration Statement at94.

36.    Third, the Registration fails to disclose why Goldman utilized a perpetuity growth rate ranging from (0.5)% to 0.5% to estimate of the terminal year unlevered free cash flow of ConocoPhillips and a pro forma company.  A terminal growth rate can only be negative if the company in question is assumed to disappear in the future, and negative growth rates are almost never used to value a company in instances outside of expected bankruptcy or insolvency situations.  However, with respect to ConocoPhillips, management projections included (i) an expected increase in EBITDAX every year from present through 2025 and (ii) an expected increase in unlevered free cash flows every year from present through 2024, with a minor decrease in 2025.

8

With respect to Concho, management projections included an expected increase in EBITDAX every year from present through 2023 and (ii) an expected increase in unlevered free cash flow every year from present through 2025 (except for a minor decrease expected in 2024).  Goldman states that these rates are "based in part on its expectations regarding long-term real growth of gross domestic product and inflation," but it is impossible to square the foregoing projections with a negative perpetuity growth rate without further explanation, including the specific inputs and assumptions underlying the application the perpetuity growth rates.[1]  A company that is valued using a negative growth rate could result in a value that is catastrophically low for stockholders if the negative growth expectations were proven incorrect.

37.    <u>Fourth</u>, the Registration Statement fails to disclose significant additional information with respect to the financial analyses performed by Concho's financial advisors ("J.P. Morgan" and "Credit Suisse"), which are material in order to fully understand the Transaction. With respect to Credit Suisse's analyses, the Registration Statement fails to disclose: (i) the reason Concho directed Credit Suisse to use the Case A (best case) scenarios for its analyses; and (ii) the individual multiples and financial metrics for the companies observed by Credit Suisse in its analysis.

38.    With respect to J.P. Morgan's analyses, the Registration Statement fails to disclose: (i) the terminal values for the companies; (ii) the inputs and assumptions underlying the application the perpetuity growth rates to the estimated unlevered free cash flows of each company of 1.0% to

---

[1] The concern is further heightened because Concho's financial advisors expected growth rates to be positive.  J.P. Morgan estimated perpetuity growth rates for the two companies to be between 1.0% and 2.0%, with the "Scenario D" (the worst-case scenario) resulting in a growth rate of 0.0%. *See* Registration Statement at 118.

2.% for Cases A and B and 0.0% to 1.0% for Cases C and D; and (iii) the inputs and assumptions underlying the discount rates ranging from 10.5% to 12.5% for Concho and 9.75% to 11.75% for ConocoPhillips.

39.     The omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the 1934 Act. Absent disclosure of the foregoing material information before the Stockholder Meeting to vote on the Transaction, Plaintiff will be unable to make a fully-informed decision regarding how to vote and the stockholder vote will be uninformed.   For that reason, the misstatements and omissions set forth above will cause irreparable harm, warranting the injunctive relief sought herein.

**COUNT I**
**VIOLATION OF SECTION 14(A) OF THE 1934 ACT AND RULE 14A-9**
(Against All Defendants)

40.     Plaintiff repeats and realleges all of the allegations set forth above.

41.     The Registration Statement violates Section 14(a) of the 1934 Act and Rule 14a9, as set forth in detail in the allegations above, because it makes material misstatements of fact and omits to state material facts which are necessary to make the statements therein not materially false or misleading.

42.     The Individual Defendants are liable for violations of Section 14(a) of the 1934 Act and Rule 14a9 because they were responsible for the creation and approval of the misstatements and omissions in the Registration Statement, and for the dissemination of such statements to stockholders.   By virtue of their positions within the Company, the Individual Defendants were aware of the materially misleading nature of the information disclosed and their duty to ensure that

10

the Registration Statement did not contain material misstatements or omissions.  Nonetheless, the Individual Defendants were, at a minimum, negligent in causing the Company to file the Registration Statement with the misstatements and omission described herein.

43.     ConocoPhillips is liable for violations of Section 14(a) of the 1934 Act and Rule 14a-9 as the issuer of the misstatements and omissions in the Registration Statement.

44.     The misstatements and omissions in the Registration Statement are material because they alter the total mix of information made available to stockholders, and a reasonable stockholder would consider the information discussed herein to be important in deciding how to vote on the Transaction.

45.     The Registration Statement is an essential link in causing Plaintiff and other stockholders to approve the Transaction.

46.     Plaintiff and other stockholders face immediate and irreparable harm because of the Registration Statement's failure to fully and accurately describe multiple important elements of the proposed Transaction.  If the stockholder vote were permitted to proceed without this material information, it would cause stockholders to potentially vote in favor of the proposed Transaction on the basis of misinformation.  The vote would be both uninformed and invalid, and the result (especially if the Transaction is approved) would be effectively impossible to reverse or otherwise compensate with damages.

47.     For these reasons, Plaintiff has no adequate remedy at law and seeks injunctive relief herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.      Preliminarily and permanently enjoin defendants, and all persons acting in concert with them from proceeding with, consummating or closing the Transaction;

B.      In the event defendants consummate the Transaction, rescind and set it aside or award rescissory damages;

C.      Direct the Individual Defendants to disseminate a Registration Statement that does not contain untrue statements of material fact and that states all material facts necessary to make the statements contained therein not misleading;

D.      Declare that defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder and are liable for all associated damages;

E.      Award Plaintiff all attorneys' fees, expert fees, and expenses incurred in prosecuting this action; and

F.      Award all other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all triable claims.

Dated: December 9, 2020

**RIGRODSKY & LONG, P.A.**

By:  */s/ Gina M. Serra*
      Seth D. Rigrodsky (#3147)
      Brian D. Long (#4347)
      Gina M. Serra (#5387)
      300 Delaware Avenue, Suite 210
      Wilmington, DE 19801
      Telephone: (302) 295-5310
      Facsimile: (302) 654-7530
      Email: sdr@rl-legal.com
      Email: bdl@rl-legal.com
      Email: gms@rl-legal.com

      **EAST END TRIAL GROUP LLC**
      Kevin W. Tucker
      186 42nd St., P.O. Box 40127
      Pittsburgh, PA 15201
      Telephone: (412) 877-5220
      Email: ktucker@eastendtrialgroup.com

      *Attorneys for Plaintiff*

13